Harry A. BLACHMAN, as a Taxpayer, Plaintiff,

v.

ERIEVIEW CORPORATION et al., Defendants.

No. C 62-364.

United States District Court
N. D. Ohio, E. D.

May 31, 1962.

———————

Harry A. Blachman, Cleveland, Ohio, for plaintiff Harry A. Blachman.

Richard C. Pickett, Columbus, Ohio, Ralph S. Locher, Daniel J. O'Loughlin, Joseph H. Crowley, Cleveland, Ohio, for defendants Erieview Corp. and City of Cleveland.

Merle M. McCurdy, Dist. Atty., Cleveland, Ohio, for Housing and Home Finance Co., Public Housing Administration, and United States.

GREEN, District Judge.

Plaintiff, as a taxpayer of the City of Cleveland, Ohio, filed his complaint in the United States District Court for the purpose of enjoining further proceedings in the Erieview project in the City of Cleveland (a downtown urban renewal project known as Erieview I Urban Project No. Ohio R 36) and for an order cancelling agreements entered into between the City of Cleveland and the United States of America, wherein the federal government committed itself to lend to the City of Cleveland funds for the development of Erieview and to cancel the agreement between the City of Cleveland and Erieview Corporation covering the redevelopment of lands in the Erieview area.

Plaintiff's amended complaint alleges that he is a taxpayer of the City of Cleveland, Ohio, and brings this action on behalf of himself and all of the taxpayers of Cleveland. Jurisdiction is predicated on 42 U.S.C.A. § 1404a and Article III, § 2 of the United States Constitution.

The defendants are the Erieview Corporation, the City of Cleveland, the Housing and Home Finance Agency and Public Housing Administration, agencies of the United States, and Robert C. Weaver, the director thereof.

Plaintiff alleges that City of Cleveland and the United States of America entered into an agreement on March 3, 1961, wherein the federal authorities are committed to lend to the City $33,875,784 and to make a capital grant of approximately $10,000,000. These funds are intended for use in a downtown redevelopment project commonly known as Erieview.

Plaintiff further alleges that the City of Cleveland has agreed to sell to the Erieview Corporation a substantial part of land within Erieview, for redevelopment by the private corporation according to plans and standards agreeable to, and agreed upon by, the United States of America and the City of Cleveland.

Plaintiff alleges in his complaint that the agreements entered into by the City of Cleveland with the United States and the Erieview Corporation are illegal and contrary to the laws of the United States

in that the Erieview area is not a blighted predominantly residential area, but in fact is a commercial or industrial area, and that the federal government is forbidden by law from giving financial assistance to such an area.

Plaintiff stated in his complaint that:

The consideration for both of the aforesaid agreements, relating to the same and adjacent lands, consist of mutual promises partly illegal, in that the federal government is forbidden by Public Law 86–372, 86th Congress, S. 2654, September 23, 1959, 42 U.S.C. § 1460, Title IV, from giving:

Financial assistance to any urban renewal area, which is not predominantly residential in character and which, under urban renewal plan therefor, is not to be redeveloped for predominantly residential uses.

Based thereon plaintiff seeks an order that the agreements be declared null and void and that the defendants, generally, be enjoined from any further proceedings related to the Erieview program.

Plaintiff bases his complaint on the fact that he is a taxpayer and will suffer irreparable loss for which he has no adequate remedy at law.

Defendant City of Cleveland initially filed a motion to dismiss the complaint. Thereafter, the Erieview Corporation and the government agencies, being the remaining parties defendant, joined in that motion. This matter is taken under consideration by the Court on the motions to dismiss, the briefs of the defendant City of Cleveland and plaintiff's briefs opposing the motions to dismiss.

The City of Cleveland in its motion to dismiss alleges

1.  The plaintiff lacks standing to invoke the jurisdiction of this court because the complaint does not disclose that he will suffer injury to any legal right.

2.  The court lacks jurisdiction because the amount actually in controversy is less than $10,000, exclusive of interest and taxes.

3.  The court lacks jurisdiction because there is no diversity of citizenship between the parties.

4.  The complaint fails to state a claim upon which injunctive relief can be granted.

The Court will take under consideration in this memorandum the fourth item that "the complaint fails to state a claim upon which injunctive relief can be granted." The City contends that there is no federal question of law involved because the averments in the complaint do not disclose facts upon which the plaintiff would be entitled to relief under any federal statute.

Plaintiff's lawsuit is based on the allegations that the federal government is forbidden to loan funds for redevelopment of areas "not predominantly residential in character" which are "not to be redeveloped for predominantly residential uses," and cites for his authority Public Law 86–372, 86th Congress S. 2654, Sept. 23, 1959, 42 U.S.C.A. § 1460, Title IV, and he relies on the first portion of this section of the act which reads:

"Financial assistance shall not be extended * * * to any urban renewal area which is not predominantly residential in character and which, under the urban renewal plan therefor, is not to be redeveloped for predominantly residential uses. * * * *"

Plaintiff failed to take into consideration other sections and amendments of the act which provide for exceptions to the rule. If there had been no exceptions and amendments to the act, plaintiff would be correct in his contention, because when the Housing Act was first written in 1949 there was no provision for allocation of funds for redevelopment of nonresidential areas.

The act has been amended on several occasions by Congress and § 413 of the Housing Act of 1959 has the following exception which appears immediately after the law quoted above and relied on by the plaintiff.

*"Provided, That, if the governing body of the local public agency determines that the redevelopment of such an area for predominantly nonresidential uses is necessary for the proper development of the community, the Administrator may extend financial assistance under this title for such project:* \* \* \*." (Emphasis added.)

A review of the legislative history of the act will be helpful in determining the issue before the Court and demonstrates Congressional policy and intent with reference to financial assistance to downtown urban areas which are predominantly nonresidential.

42 U.S.C.A. § 1460 had its birth in the Housing Act of 1949, 42 U.S.C.A. § 1450 et seq. The 1949 act made no provision for allocation of federal funds for redevelopment of nonresidential areas.

In 1954 the Housing Act was amended, August 2, 1954, c. 649, Title III, § 311, 68 Stat. 626, and the following provision inserted:

" \* \* \* and provided further, That financial assistance shall not be extended under this title for any project involving slum clearance and redevelopment of an area which is not clearly predominantly residential in character unless such an area is to be redeveloped for predominantly residential uses, except that, where such an area which is not predominantly residential in character contains a substantial number of slum, blighted, deteriorated or deteriorating dwellings or other living accommodations, the elimination of which would tend to promote the public health, safety and welfare in the locality involved and such area is not appropriate for redevelopment for predominantly residential uses, the Administrator may extend financial assistance for such a project, but the aggregate of the capital grants made pursuant to this title with respect to such projects shall not exceed 10 per centum of the to-

tal amount of capital grants authorized by this title."

This amendment was embodied in 42 U.S.C.A. § 1460. The committee reports on this amendment are found at 1954 U.S.Code Cong. & Adm.News, page 2757 et seq. With this amendment Congress took the first step toward extending the limits of urban redevelopment.

In 1955, 42 U.S.C.A. § 1460 was once again amended. A further proviso was added, reading:

"Where land within the purview of subparagraph (1) (ii) or (1) (iii) hereof (whether it be predominantly residential or nonresidential in character) is to be redeveloped for predominantly nonresidential uses, loans and advances under this title may be extended therefor if the governing body of the local public agency determines that such redevelopment for predominantly nonresidential uses is necessary and appropriate to facilitate the proper growth and development of the community in accordance with sound planning standards and local community objectives and to afford maximum opportunity for the redevelopment of the project area by private enterprise \* \* \*." Aug. 11, 1955, c. 783, Title I, § 106(c), 69 Stat. 637.

The House report on this bill (Conference report 1622) stated:

"Subsection (c) would add a provision to section 110(c) of the Housing Act of 1949 which would authorize loans and advances to be made under the slum clearance and urban renewal program to assist in the redevelopment of either predominantly open land or open land for industrial or other nonresidential uses." 1955 U.S.Code Cong. & Adm. News, p. 2905.

The Senate report (H.R. 913) amplified on this:

"This provision for assistance to redevelopment for nonresidential uses or industrial uses will be used for such areas as are found in many

communities adjacent to railroads or other industrial property. Under the present law, land which is not predominantly residential in character cannot (except in certain limited cases) be developed for industrial or other nonresidential use." 1955 U.S.Code Cong. & Adm.News, p. 2922. Thus, the Housing Act was extended a step further into the nonresidential area.

The next amendment of § 1460 took place in 1956, Aug. 7, 1956, c. 1029, Title III, § 302(a) (2), (b), (c), (d), 70 Stat. 1097. This amendment, generally speaking, consolidated the previously enacted provisions relating to slum clearance redevelopment with those relating to rehabilitation and conservation. As amended, § 1460 read:

"Financial assistance shall not be extended under this subchapter with respect to any urban renewal area which is not clearly predominantly residential in character unless such area will be a predominantly residential area under the urban renewal plan therefor: *Provided*, That, where such an area which is not clearly predominantly residential in character contains a substantial number of slum, blighted, deteriorated, or deteriorating dwellings or other living accommodations, the elimination of which would tend to promote the public health, safety, and welfare in the locality involved and such area is not appropriate for predominantly residential uses, the Administrator may extend financial assistance for such a project, but the aggregate of the capital grants made pursuant to this subchapter with respect to such projects shall not exceed 10 per centum of the total amount of capital grants authorized by this subchapter."

"In addition to all other powers hereunder vested, where land within the purview of clause (1) (ii) or (1) (iii) of the first paragraph of this subsection (whether it be predominantly residential or nonresidential in character) is to be redeveloped for predominantly nonresidential uses, loans and advances under this subchapter may be extended therefor if the governing body of the local public agency determines that such redevelopment for predominantly nonresidential uses is necessary and appropriate to facilitate the proper growth and development of the community in accordance with sound planning standards and local community objectives and to afford maximum opportunity for the redevelopment of the project area by private enterprise \* \* \*."

Having taken these two steps toward expanding the Housing Act into redevelopment of nonresidential areas, Congress took a large stride forward in 1959. In that year § 1460 was once again amended, Sept. 23, 1959, Pub.L. 86–372, Title IV, § 413, 73 Stat. 675, 677, whereby virtually the entire language heretofore quoted was eliminated, and the following substituted:

"Financial assistance shall not be extended under this subchapter with respect to any urban renewal area which is not predominantly residential in character and which, under the urban renewal plan therefor, is not to be redeveloped for predominantly residential uses: *Provided,* That, if the governing body of the local public agency determines that the redevelopment of such an area for predominantly nonresidential uses is necessary for the proper development of the community, the Administrator may extend financial assistance under this subchapter for such a project: *Provided further,* That the aggregate amount of capital grants contracted to be made pursuant to this subchapter with respect to such projects after September 23, 1959 shall not exceed 20 per centum of the aggregate amount of grants authorized by this subchapter to be contracted for after such date."

Plaintiff's complaint does not recite that portion of 42 U.S.C.A. § 1460 be-

ginning with the phrase, *"Provided, That, if the governing body."* There is no allegation in the complaint that the City of Cleveland has not made an appropriate determination that redevelopment of the Erieview area is necessary for the proper development of the community. A review of plaintiff's reply brief indicates that the City did make such a determination by ordinance adopted December 12, 1960.

Section 1460 underwent its latest amendment in 1961, at which time the percentage limitation for nonresidential areas was raised from 20% to 30%. June 30, 1961, Pub.L. 87–70, Title III, § 308, 75 Stat. 166, 168, 172.

The committee commentary to this last amendment is most illuminating. It reads:

"Section 309 would permit 30 percent instead of 20 percent of urban renewal grant authority to be used for the renewal of areas not filling the predominantly residential requirement of the law.

"Urban renewal project areas presently are required to be 'predominantly residential' in character either before or after renewal, except that 20 percent of available urban renewal grant funds may be devoted to projects without regard to this requirement. In addition, exceptions to the requirement are provided for disaster areas and for certain projects in the vicinity of colleges or universities. Another exception is to be found in the recently enacted Area Redevelopment Act (Public Law 87–27), to stimulate industrial and commercial development in depressed areas.

"Originally, the Housing Act of 1949 made no provision for such exceptions, as urban renewal was regarded almost solely as a tool for the removal of slums and the provision of good residential neighborhoods. Over the years, however, it became clear that the construction of good neighborhoods was intimately tied to the economic health of the community. The revitalization of industrial, commercial, and downtown areas so as to attract job-creating private investment was realized as a necessary goal to which urban renewal could make a substantial contribution. Consequently, a 10-percent exception to the 'predominantly residential' requirement was put into the Housing Act of 1954, and this was raised to 20 percent in the Housing Act of 1959. Under existing law this amounts to $313.6 million. Practically all of this has been committed at this time.

"With growing attention to the needs for downtown renewal, it appears necessary to increase the exception to provide for a greater number of projects of this type. The economic, institutional, and cultural bases of community life are increasingly recognized as necessary to the creation and continuing existence of good homes in sound urban neighborhoods." 1961 U.S.Code Cong. & Adm.News, p. 1952.

An interesting commentary on this question of nonresidential redevelopment is found in the committee report on the Area Redevelopment Act:

"While the primary purpose of the urban renewal program is the elimination of residential slums, there is a growing recognition of the importance of nonresidential slum clearance projects. Sound city planning often requires that rundown business districts be rehabilitated or cleared and redeveloped if the city is to fulfill its proper functions. Such redevelopment provides new opportunities for employment and business expansion. Moreover, experience has shown that public revenues can be increased manyfold by eliminating blight and returning land to its highest and best use. By so increasing tax revenues, such projects enable the local government to meet its many other responsibilities toward its citizens." 1961

**802**

U.S.Code Cong. & Adm.News, p. 1581.

There is a very clear picture here of the development of the law regulating availability of federal funds for redevelopment of nonresidential areas. The Housing Act of 1949 did, in fact, prohibit such grants. Five years later a restricted right to make such loans was established. Again, after a five-year lapse, the percentage of funds so available was doubled and the standards for redevelopment of nonresidential areas were substantially revised towards the ends of liberality. Within the past year § 1460 was again amended, so that presently almost one-third urban renewal funds may now be allocated to nonresidential areas. With this last amendment came a clear declaration of congressional policy and intent that the act was meant to provide for financial assistance in the redevelopment of downtown nonresidential areas, such as Erieview. In fact, it is said in the City of Cleveland's reply brief, practically every large city in the country has obtained, or is in the process of obtaining, urban renewal loans to redevelop nonresidential areas, under the provisions of the Act.

It is the opinion of the Court that the statutory provisions relied on by plaintiff, contrary to his contention, do provide for financial assistance by the federal government for the redevelopment of downtown nonresidential areas, such as Erieview. The plaintiff has recited only a part of a statutory provision out of the context of the whole, which leads to his misinterpretation of the act. The plaintiff is not sustained in his contention that the City of Cleveland, by entering into agreements for financial assistance with reference to Erieview with the Public Housing Administration, has created an illegal debt.

It is the finding of this Court that the plaintiff's complaint does not state a cause of action under the federal statute recited therein; that the plaintiff is not entitled to the relief requested; that the defendants' motions to dismiss the complaint should be, and are hereby, granted.

The Court having granted the order of dismissal on the basis that the complaint failed to state a claim upon which relief might be granted, does not deem it necessary to rule on the questions of jurisdiction raised by the defendants.